Willie, Chief Justice.
This suit is against the sureties upon a bond of W. M. King, given to secure the faithful performance of bis duties as tax collector of Jack county. It is brought in the name of John Ireland, Governor of the State of Texas, for the use of Jack county, and the breach alleged is the failure to pay over to that county a large amount of- tax money collected for its benefit. The bond sued on, is just such a one as is required to be given by the collector in reference to the taxes due the State on property lying in Jack county. Such a bond, and the one required to be given for the faithful discharge of the duties of the collector in reference to county taxes, are identical in every respect, except that the former is made payable to the Governor and the latter to the county judge of the county. (Rev. Stats., arts. 4732, 4734.)
This bond was made payable to the Governor, and hence upon its face appeared to relate wholly to the State tax pn property in Jack county. But the petition alleged that the bond was given to secure Jack county in the payment of the county taxes that might be collected by King; and the appellee urges that, if this is the case, it matters not to whom the bond is made payable, it enures to the benefit of Jack county, and can be sued on in the name of the Governor for the use of that .county. This proposition can not be disputed. Our Revised Statutes bear it out (article 682); and it has- been so decided by this court. (Washington County v. Schutz, Galveston Term, 1884, unreported; Smith v. Wingate, 61 Texas, 54.)
But whilst the allegations of the petition set forth that the bond was intended to cover county taxes, there was no proof of that fact made, upon the trial. A certified copy of the bond under the hand and seal of the county clerk was read in evidence. This copy purported to be a transcript of the original bond deposited and on file in the county clerk’s office; but this was not proof that it had been put there as the bond given to secure the collection and payment of county taxes. The bond *686 given in relation to State taxes has to be first filed in the county clerk’s office, and there recorded, before it goes to the Comptroller. This bond might have been deposited and kept there by mistake. However this may be, the certificate of the clerk is evidence that there was such a bond there, and of the date of its filing, and its contents; but not that it was properly there, or that its contents should have been different from what they were. If the clerk had gone so far as to certify that the bond was made payable to the wrong person through mistake, and that it had been filed with him as the county tax bond, his certificate would not have been evidence of these facts. These were things not contemplated by statute to be proved by an ex parte certificate. To prove them he should have been placed upon the stand as a witness. If he could not establish them directly by certificate, he could not do so inferentially in this way.
As there was no proof that the bond was intended for county taxes, and upon its face it was just such an' instrument as is required to cover those collected for the State, we think the court erred in its findings that the bond was intended to secure the faithful performance of the collector’s duty in reference to county taxes.
On the trial of the cause the appellee introduced in evidence the “county ledger” to show the state of the account between King and the county and the extent of King’s defalcation. This was objected to, but the objection was overruled by the court. We find in our Revised Statutes a requirement that such a book shall be kept by the county clerk, but we find no statute making it admissible in evidence against the collector to show the amount of his indebtedness to the county on tax account. The entries in the ledger to-the debt of the collector are taken from receipts given by him for the tax rolls when they are delivered to him. These receipts are, of course, good evidence against him; but the account made from them is the mere statement of the clerk that he did give such receipts, and is, of course, no more than hearsay evidence and inadmissible. It falls within none of the rules of the common law which -admit this species of testimony in exceptional cases, and no statute being provided for its being received, it should have been ruled out in this case. The certified copy of an inadmissible record is, of course, incompetent as evidence. In the case of Allbright v. State, 25 Texas, 687, a similar account kept with a tax collector by the Comp- *687 , troller of Public Accounts was declared to have been improperly admitted in evidence and the case is full authority for the rejection of the present account. Subsequent to the making of that decision, the Legislature passed an act declaring the Comptroller’s accounts lawful evidence in suits by the State against tax collectors; but it has gone no further, and by making such accounts alone competent evidence, it has impliedly said there shall be no other exceptions to the general rule by which all such statements are excluded.
Opinion delivered October 25, 1887.
What we have said as to the above account applies also to that in which a statement of the occupation taxes received by the collector is made. It was error in the court not to exclude them both. The other assignments bring nothing of importance to our attention.
There was no necessity to prove the election of King. The bond having recited his official, character, his sureties were estopped from denying it. (Burnett v. Henderson, 21 Texas, 589.) His election as sheriff made him collector of taxes, so that the election to the one office was equivalent to an election to the other.
For the errors indicated, the judgment will be reversed and the cause remanded.
Reversed and remanded.