## WARRICK v. MOORE COUNTY · et al.
### (No. 2765.)

(Court of Civil Appeals of Texas.  Amarillo.
Feb. 16, 1927.)

**1. Insane persons ⬅30—Statute providing for appointment of guardian for insane persons presupposes prior legal ascertainment of mental unsoundness (Rev. St. 1925, art. 4123).**

Rev. St. 1925, art. 4123, providing for appointment of guardian for person of unsound mind and requiring that, after notice, county judge may proceed to appointment if he is satisfied that such person is of unsound mind presupposes prior legal ascertainment of party's mental unsoundness.

**2. Insane persons ⬅27—County court's judgment, declaring one of unsound mind, is appealable (Rev. St. 1925, arts. 4267, 4272).**

County court's judgment in lunacy proceeding, based on jury's verdict that defendant was not of sound mind, under Rev. St. 1925, arts. 4267, 4272, is appealable, since finding as to unsoundness of mind is as much a part of probate proceeding as order of appointment of guardian.

**3. Insane persons ⬅27—Application for certiorari to revise judgment declaring petitioner insane held "direct attack" on judgment (Rev. St. 1925, art. 4329).**

Application for certiorari to have judgment declaring petitioner insane revised and superseded and for new trial is direct attack on judgment, being method of appeal provided by Rev. St. 1925, art. 4329, where party had no notice of proceedings and evidence did not support judgment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Direct Attack.]

**4. Insane persons ⬅27—One declared insane may petition for certiorari to revise judgment without first proceeding by bill of review in county court.**

It is not necessary to first proceed by bill of review in county court before applying to district court for writ of certiorari to have judgment declaring petitioner insane revised and superseded.

**5. Insane persons ⬅27—Lunacy proceedings should be tried de novo on certiorari to district court to revise judgment (Rev. St. 1925, art. 4318).**

Where one adjudged insane by county court seeks to have judgment revised by certiorari to district court, on hearing in district court cause should be tried de novo, in view of Rev. St. 1925, art. 4318.

**6. Insane persons ⬅30—After jury's finding that party is of unsound mind, court must immediately appoint guardian of both person and estate of such person.·**

Court is required, after finding of jury that party is of unsound mind, to immediately proceed to appoint guardian of person and estate

of such person, and appointment of guardian of estate only is not compliance.

**7. Insane persons ⬅27—Petition for certiorari· to revise judgment declaring petitioner insane authorizes writ, where it shows lack of knowledge of nature of proceeding, and alleges that petitioner is not of unsound mind.**

Petition for certiorari to have judgment of county court declaring petitioner insane revised and superseded, and for trial de novo in district court, will authorize writ where it shows petitioner's lack of notice or knowledge · that she was being tried for insanity, and alleges that she is not of unsound mind.

**8. Insane persons ⬅27—In determining motion to dismiss certiorari proceeding to revise judgment in lunacy proceeding, petition must be taken as true.**

In passing on question as to whether motion to dismiss proceeding in certiorari to revise county court's judgment declaring petitioner insane should be sustained, petition must be taken as true, since such motion is on same footing as general demurrer.

**9. Constitutional law ⬅309(1)—Insane persons ⬅13—Due process requires notice to defendant of lunacy proceeding.**

Due process of law requires that some notice be given to defendant of proceedings against her to have her declared of unsound mind.

**10. Insane persons ⬅14—Jury ⬅19(8)— Defendant in lunacy proceeding has right to attorney of her own choosing and to jury selected after examination and testing.**

Defendant in lunacy proceeding has right to be represented by attorney of her own choosing and right to jury selected after examination and testing.

**11. Insane persons ⬅27—Certiorari will issue to revise judgment declaring petitioner insane,· and award new trial, where petition shows that injustice may have been done without petitioner's fault.**

Writ of certiorari to revise judgment declaring petitioner of unsound mind will be granted, and new trial awarded, where petition shows that injustice may have been done petitioner without his fault; degree of strictness required in rules applicable to motion for new trial not being required.

**12. Insane persons ⬅19—Question whether defendant is of sound mind should not be submitted without explanatory charges.**

Submission to jury in lunacy proceeding of question whether defendant was of sound mind was improper, where unaccompanied· by explanatory charges, especially where witnesses testifying that defendant was of unsound mind preceded opinions with statements lacking in probative force to establish conclusions.

**13. Witnesses· ⬅266—Defendant in lunacy proceeding is entitled to cross-examination of adverse witnesses.·**

In lunacy proceeding, defendant is entitled to have witnesses testifying against her cross-examined.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

14. **Insane persons** ⬡⟶2—Evidence held insufficient to show that 80 year old lady, who sold oil royalties at price below value, was of unsound mind.

Evidence *held* insufficient to support verdict that 80 year old lady was not of sound mind, where she sold oil royalties at price below their value, and stayed at witness' house without seeming to have any idea of value of board and keep.

Appeal from District Court, Moore County; Reese Tatum, Judge.

Application by Maggie S. Warrick for a writ of certiorari to have a judgment of the county court revised and superseded, and for a trial de novo in the district court. After the writ was issued the proceeding was dismissed on motion of Moore county and others, and petitioner appeals. Reversed and remanded.

R. H. Hamilton, of Amarillo, for appellant.
Samuels & Brown, of Fort Worth, for appellees.

RANDOLPH, J. The appellant presented to the district judge of the Sixty-Ninth judicial district her application for a writ of certiorari to have a judgment of the county court revised, the judgment superseded, and for a trial de novo in the district court. The judge of said district court granted the application and ordered said writ issued upon the giving of stipulated bonds. The writ was issued, served, and returned into that court. A motion to dismiss the proceeding was made by appellees, and the district court sustained same, and dismissed the case from its docket, and ordered a writ to issue to the county court of Moore county to proceed with the judgment entered in that court. From this action of the trial court, appellant appeals to this court.

The grounds of appellees' motion to dismiss the certiorari proceedings were as follows:

"(1) That the application on its face shows that Mrs. Warrick was adjudged by a jury in the county court of Moore county to be a person of unsound mind.

"(2) Proceedings in the county court declaring one to be a person of unsound mind are not probate proceedings, or final, from which no appeal lies.

"(3) It is made the duty of the county judge, where one has been adjudged a person of unsound mind, to appoint a guardian of the estate of such person without an application having been filed therefor.

"(4) The county judge in this case appointed J. H. Feltz as temporary guardian, which is authorized by law, and caused citation to be issued and served, returnable to the next regular term of court after said adjudication.

"(5) At said term the appointment to be made permanent in accordance with the law governing such proceedings.

"(6) The district court is without jurisdiction to inquire into the regularity of the proceedings in the county court adjudging Mrs. Warrick of unsound mind.

"(7) The district court is without jurisdiction to inquire into the sufficiency of the testimony adduced on the trial, where Mrs. Warrick was declared to be of unsound mind.

"(8) Said application does not point out any error committed by the county judge in the guardianship proceedings, which would give the district court jurisdiction on certiorari to remove said appointment.

"(9) The application for certiorari was improvidentially granted, and should therefore be dismissed."

As stated, the trial court sustained the motion and dismissed the application for certiorari, and canceled all proceedings thereunder.

For a proper determination of the correctness of the trial court's ruling on the grounds of such motion, and of the contentions of appellant, it will be necessary for us to quote at length from the petition for certiorari, as the allegations of the petition necessarily involve the action of the trial court in dismissing same.

Plaintiff, in her petition, alleges substantially:

The filing of an affidavit on February 3, 1926, by J. H. Feltz, in the county court of Moore county, in which affidavit Feltz charges that he has reason to believe and does believe that M. S. Warrick, a resident of the county of Moore, and who is temporarily in the town of Dumas, is a non compos mentis, and is without a guardian of her person or estate, and prays for such proceedings in the premises as are provided by law. That on the same day the county judge issued her warrant to the sheriff of Moore county, commanding him to forthwith summon six residents of Moore county, who were qualified jurors, to appear before her on the same day, to serve as jurors in the trial of said M. S. Warrick upon said affidavit, and that said sheriff at said time bring before her the said M. S. Warrick. That on the said day the sheriff made his return, showing the summoning of six jurors, and also produced Mrs. Warrick. On the same day a hearing was had before the jury on the affidavit above mentioned. The trial court, on said day, appointed an attorney to represent Moore county on the hearing, there being no county attorney of Moore county. That no attorney was appointed to represent Mrs. Warrick, nor did she have any attorney or other person to represent her on said hearing, for the reasons hereinafter shown. That only one issue was submitted to the jury, which issue is as follows: "Is the defendant, M. S. Warrick, otherwise known as Maggie S. Warrick, of sound mind? You will answer 'Yes' or 'No.'"

That in response to said special issue the jury answered "No." That, upon said verdict the said county judge, on the same day, entered her judgment decreeing that the said

M. S. Warrick "be and she is hereby duly adjudged and decreed to be of unsound mind." That on the same day the said county judge entered her order appointing the said J. H. Feltz as temporary guardian of the estate of M. S. Warrick, a non compos mentis, without the necessity of the issuance of citation, but that, upon the qualification of the said guardian, the clerk of said court was ordered to issue and have served proper notice and citation thereon, as required and directed by law, returnable to the next term of said court, at which time said appointment was to be made permanent if not contested, also requiring bond in the sum of $60,000 of such temporary guardian. That said bond was given, and the oath was taken by the said Feltz as such temporary guardian. On the 4th day of February, 1926, such citation was issued by the county clerk. On February 19, 1926, the county judge entered an order appointing J. H. Feltz as guardian of the estate of Mrs. Warrick upon the recitation that she had been duly and legally found to be of unsound mind. That Feltz took the oath and gave the bond as such guardian. That all of said proceedings and all of said orders of Margaret Irvin Wall, county judge of Moore county, were and are null and void for the following reasons:

"(a) No citation and no notice of any character whatever of the complaint made by the said J. H. Feltz hereinbefore referred to and set out above, and no citation or notice of any character of the hearing or trial on said complaint was ever served on or given to your petitioner previous to the hearing thereof, and the order adjudging your petitioner to be of unsound mind.

"(b) That your petitioner, though produced in the courthouse on the date of said original hearing on said complaint, was not informed in any way of the nature of said proceedings, and did not know that said proceedings were for the purpose of having your petitioner declared of unsound mind, until after said order had been entered.

"(c) That, on the hearing upon said complaint, neither Moore county, nor the attorney appointed to represent Moore county, on said hearing, nor J. H. Feltz, nor any other person, made known to your petitioner that a complaint in lunacy had been filed alleging that your petitioner was non compos mentis. That none of said parties and persons and no other person during the hearing and trial on said charge or at any time before said hearing or at any time before said order declaring your petitioner to be of unsound mind, was entered, ever gave your petitioner notice, or in any manner informed her that a charge of mental incompetency had been filed alleging your petitioner to be non compos mentis. That your petitioner is over 80 years of age, and totally unacquainted with court proceedings, and is affected with partial deafness, and, when brought into court for the purpose of attending said hearing, your petitioner asked the question, 'What is all this about?' and was answered by some person adversely interested in said proceedings, as follows: 'This is a proceeding whereby you will get more money for the property you have sold. Wouldn't you like to have more money for it?' to which your petitioner replied: 'That would be all right if it is honest'—without being aware and without having been notified by any person, or any officer of the court, connected with, or interested in, said proceedings, that the nature of said proceedings was any inquiry whatever as to her mental condition. And your petitioner alleges: That the parties adversely interested deliberately and designedly at said time and at all times during said proceedings and prior thereto avoided any statement or any suggestion to your petitioner that such proceeding was for the purpose of inquiring into her mental condition, or that such proceeding was for the appointment of a guardian of petitioner's estate. That such persons adversely interested in, and conducting said proceedings, for the purpose of having her declared non compos mentis, or of unsound mind, knew that your petitioner was wholly without experience and ignorant of the nature of said proceedings, and knew that the manner in which the same were conducted would not at said time give her information as to the real nature of the inquiry. That no suggestion was made to her by any officer of the court or any representative in court participating in the conduct of said proceedings and none of them ever suggested to her that she was entitled to representation by attorney or to the attendance and testimony of witnesses in her behalf, for the purpose of repudiating such charge; neither was she placed upon the witness stand and informed of the nature and character of such proceedings or tested in any manner whether she understood the nature and obligations of an oath as a witness in court; nor was she given any opportunity to present any facts or deliver any testimony, either in person or by other witnesses, as to her mental condition.

"(d) That your petitioner had no time and no opportunity to defend against said charge. That the failure to have time and opportunity to defend against said charge was not due to any fault, failure, negligence, or shortcoming of your petitioner, as hereinafter shown.

"(e) That your petitioner was wholly without representation by counsel on said hearing. That the failure to have counsel to represent petitioner on said hearing and trial was not due to any fault, failure, or lack of diligence on petitioner's part. That, on the date said charge was filed, February 3, 1926, your petitioner was brought into court by the sheriff of Moore county, Tex., acting under orders of the county judge of said county, as hereinbefore alleged. That at 1 o'clock on said date a jury was impaneled to hear said complaint against your petitioner. That on the same date all the proceedings concerning said charge were had, including order of said county judge of Moore county, Tex., declaring your petitioner to be of unsound mind, and appointing a temporary guardian of your petitioner's estate. That during all of said time your petitioner was in charge of the sheriff of Moore county, Tex., in obedience to the order of the said county judge as above alleged, and for this reason your petitioner had no opportunity to prepare any defense against said complaint and charge and no opportunity to obtain counsel to represent her on said hearing. That your petitioner was not informed by any one that any complaint of any

character had been filed, charging her with anything. That she did not know that said proceedings were in any way directed against her. That she did not know that any complaint had been filed charging that she was non compos mentis, and she did not at any time during said proceedings know that she was being tried for anything. That she did not know any necessity for counsel to represent her existed. That your petitioner was not present in the courtroom where said hearing was had at the beginning of said hearing, and did not hear said charge read, and was not otherwise informed of same or the nature of said proceedings. That no witness testified in the presence and hearing of your petitioner that she was of unsound mind.

"(f) Petitioner says that in the proceedings of February 3, 1926, the issue, and only issue, submitted to the jury to answer whether the defendant, Maggie S. Warrick, was of sound mind, was an illegal and fictitious issue, and the negative answer of the jury to said issue did not constitute a verdict of the jury in accordance with the character of the inquiry prescribed by statute, and that such issue, with the jury's answer thereto, does not and did not constitute a finding upon the part of the jury that this petitioner was of unsound mind or in such condition of mental incompetency, within the purview and meaning of the statutes in such matters, and that such verdict is wholly meaningless and void.

· "(g) Petitioner further says: That, as shown by the order of the court, hereinabove set out, the county judge based her said judgment and decree that petitioner was of unsound mind, exclusively 'upon such verdict as above rendered'; that is, upon the verdict of the jury on the issue submitted as hereinbefore shown and which verdict is wholly meaningless and void. That for this reason the order of said court, purporting to decree your petitioner to be of unsound mind, is wholly void.

· "(h) Petitioner further says: That the statutes of this state do not provide for any procedure, or for any hearing of temporary guardianship, or for the appointment of any temporary guardian in the case of persons of unsound mind; neither do they provide that, where proceedings are instituted and initiated as in this case, under chapter 12, tit. 69, beginning with article 4267, R. C. S. 1925, a temporary guardian of the estate of a person of unsound mind (in connection with the order of the court decreeing a person of unsound mind) may be appointed, and that thereafter a permanent or regular guardian of the estate of such person may be had or continue from the temporary guardianship proceedings.

"(i) If mistaken in the last above subdivision of this paragraph, your petitioner further says: That, on account of the void and illegal proceedings, including the verdict of the jury and judgment of the court, herein shown, and for the reasons herein set forth, there is no basis whatever for the purported notice for the purpose of contesting or making the appointment of a temporary guardian, J. H. Feltz, a permanent and regular guardian at the next term of the court, and that such appointment by the probate judge of the said J. H. Feltz as regular guardian, based upon the void and illegal proceedings hereinbefore shown, and the void orders resulting therefrom, are also wholly void, and the said probate court was without jurisdiction to enter said order and make such appointment.

"XV. That, if said proceedings were and are not void, then your petitioner says that the court committed such error on said hearing and trial on February 3, 1926, as to make it necessary as a matter of law and justice, that the judgment of said court be revised, set aside, and held for naught. That your petitioner assigns as error committed in said cause all and each of paragraph XIV above, and said subdivisions thereof, in the same language as in said paragraph, and the various subdivisions thereof used, to all and each of which reference is here made for all purposes and as fully as if said paragraph and each subdivision thereof were alleged and repleaded at this point, in your petitioner's petition, in so many words, and also further assigns as error:

"(a) That no testimony sufficient to authorize a jury to find your petitioner to be of unsound mind was offered on the trial of said cause, that three witnesses only testified, viz. J. H. Feltz, —— Laney, and —— Morton. That said Feltz testified substantially, as follows: 'I am acquainted with Mrs. M. S. Warrick; I have known her since my childhood. On or about —— day of ——, Mrs. Warrick sold to some parties in Amarillo, —— acres of land. She also sold certain oil royalties on said land. I do not consider that she got the value of the land, nor did she get the value of the royalties on the oil. I do not think she knew the value of the land and the royalties on oil at the time she sold it, and do not think she knows the value of her property. I do not think she is of sound mind.' That said Laney testified as follows: 'I have known Mrs. Warrick, the person charged with insanity, for several years. She often comes to my house and stays for several days at a time. I have observed her conduct with children, and noticed that she is at times very harsh with them. She will stay at my house or a neighbor's house for a week or more at a time, and seems to have no idea of the value of her board and keep. I do not think she understands values. I do not think she is of sound mind.' That the testimony of Morton was as follows: 'I have known Mrs. Warrick for several years. I know about her transaction with the Amarillo people in the sale of her land and oil and gas royalties. I do not think she got the value of the land nor the oil and gas royalties when she sold same, nor anything like the value. I think the property was worth a great deal more than she got for it.' That no other testimony was offered upon the trial of said cause. That said testimony was wholly insufficient to authorize and justify a jury to find that petitioner was of unsound mind. That said testimony was and is wholly insufficient to support the finding of the jury that the petitioner was of unsound mind. That the witnesses above mentioned were not expert witnesses, nor was there testimony offered or introduced as expert testimony or as that of trained observers, as to the mental condition of your petitioner; but said testimony was testimony of lay or nonprofessional witnesses, and no foundation whatever was laid for the admission in evidence of the opinions of said witnesses or any of them, as to the mental condition of your petitioner, nor were there any admissible specific facts narrated by them,

or any of them, or stated by them, or any of them, upon which such opinions could be based.

"(b) That upon the trial of said cause the court wholly failed to instruct the jury as to the law bearing upon the cause. That the jury in said cause retired· and brought in a verdict without any instruction from the court as to what the law applicable to any of the phases of the case was. That the jury was wholly without the guidance of the law in its answer to the issue submitted as above shown, and was ·wholly without any knowledge of the law in any instructions to it, given by the court, as to what a person of unsound mind is, or as to what a person of unsound mind is at law. That the jury, in answering the issue submitted to it, was left to its own caprice as to the law governing it in its consideration of said issue and as to the law of the case as a whole.

"(c) That the court failed to define for the jury, or to instruct the jury who is a person of unsound mind, or when a person, as a matter of law, is of unsound mind. That the jury was wholly without the guidance of the law of this state on the above special issue, in arriving at its answer thereto.

"(d) That no issue as to whether the defendant was of unsound mind was submitted to the jury in any manner.

"(e) That the jury's answer to the said issue is not a finding by the jury that petitioner was of unsound mind.

"(f) That no opportunity was given the jury to find whether the defendant was of unsound mind or not. That the court erred in the submission to the jury of the issue that it did submit to the jury as above shown.

"(g) That there is no provision of the law of this state authorizing the appointment of a temporary guardian of a person of unsound mind. That the court appointed a temporary guardian of your petitioner on the theory that the jury had returned a verdict that she was of unsound mind, and upon the judgment of the court, rendered exclusively upon the said verdict of the jury, that petitioner ·was of unsound mind.

"(h) That there is no law in Texas authorizing the appointment of a guardian of the estate of a person of unsound mind, save and except he be appointed guardian of the person of such person also. That in this case the court appointed J. H. Feltz guardian of the estate of your petitioner only, and did not appoint him or any other person guardian of the person of your petitioner. That the appointment of Feltz as such guardian, in the manner in which same was done, is not authorized by any law in this state, but is contrary to law as hereinbefore shown.

"(i) That the county judge of Moore county, at the time of entering the order appointing J. H. Feltz as guardian, which order was based exclusively upon the verdict of the jury and judgment of the court hereinbefore alleged to be void, heard no further or additional testimony to that heard on the 3d day of February, 1926, relative to the mental condition of this petitioner at said time.

"XVI. That petitioner would show that said proceedings were not only void and erroneous as above shown, but that said proceedings were unfair and unjust to petitioner. That in truth and in fact, your petitioner is not now, and never has been, of unsound mind, but now is,

and always has been, of sound and disposing. mind and memory, and now is, and always has been, capable in every way of taking care of her person and her property. That your petitioner denies each and every allegation in the complaint of J. H. Feltz contained, above· set· out and shown. Your petitioner is not an· idiot, is not a lunatic, and is not insane, nor· is she a person of unsound mind. Your petitioner further alleges: That she has, and had· at the time of the above inquisition, property of the value of about $40,000, and at the time of said proceedings owed no debts, and has handled the affairs of her said estate with thrift and economy. That the amount of said· estate is more than enough to provide for her maintenance and support for the remainder of her life. And she further alleges: That, since the death of her husband in 18— the revenues. and income of said property have exceeded her expenditures, and that the corpus of her property has been annually increased by the said· excess of her income over her expenditures. That said guardian purported to qualify and has taken possession of said property under the· void and illegal proceedings of the probate court above mentioned. Therefore, your petitioner says that the judgment rendered as· aforesaid is erroneous and unjust to your petitioner.

"Wherefore, your petitioner prays for a writ of certiorari, commanding the proper officer of· Moore county to cite the clerk of the county court of said county, to make out a certified transcript of the proceedings had in the cause· styled 'County of Moore v. M. S. Warrick, otherwise known as Maggie S. Warrick, No. 43, in the county court of Moore county, Tex.,' same being the cause in which the proceedings herein complained of were had, and transmit same to this court on or before the return date of·the next term thereof; that Moore county, plaintiff in said cause No. 43, be cited to answer this petition; that J. H. Feltz be cited to answer this petition; that said cause be tried de novo; and that your petitioner have judgment revising, setting aside, and holding for naught, the proceedings in said cause,. and that she have judgment that she is not of unsound mind.

"Petitioner further prays for the order of this court directing that the writ of certiorari, when granted, shall operate as a supersedeas of the judgments of the county court, and that the court shall by his order fix the sum of the bond. into which petitioner shall enter for that purpose, conditioned as required by law, which bond petitioner is ready and able to make. ·

"Maggie S. Warrick, having been first duly sworn, says that the matters in the foregoing· petition are true.    Maggie S. Warrick.

"Subscribed and sworn to by Maggie S. Warrick before me this 20th day of April, A. D. 1926. Dorothy Wagerle, Notary Public in and: for Potter County, Texas."

That said petition was presented to the· Honorable Reese Tatum, judge of the Sixty-Ninth judicial district, and was by him granted, and the writ ·of certiorari ordered to issue upon the petitioner's giving bond in the sum of $500 to secure the costs, and in the sum of $10,000 to operate as a supersedeas of the judgment of the county court. The bonds

were duly given, the writ issued and served .and returned to the district court of Moore county, and a writ of supersedeas issued. Upon motion, above set· out, the certiorari proceedings were dismissed as stated.

[1, 2] The first question presented by the action of the trial court in dismissing the cer·tiorari proceeding is, the jury having found Mrs. Warrick of unsound mind, was that judgment final, precluding an appeal to the ·district court?

There are two distinct provisions in our ·statutes for the appointment of guardians for persons of unsound mind. Article 4123, Revised Civil Statutes 1925, requires that, after notice, the county judge may proceed to the ·appointment of a guardian, but it is required thereby that the court must be satisfied that such person is of unsound mind. This article ·necessarily presupposes a prior legal ascer·tainment of the party's mental unsoundness. ·Greenwood v. Furr (Tex. Civ. App.) 251 S. ·W. 332.

Article 4267 of said statutes, the other pro·vision for such appointment, and under which article the proceedings here in question were ·had, is as follows:

"Upon information that any person of the county is of unsound mind, or is an habitual drunkard, and is without a guardian, if satisfied ·that there is good cause for the exercise of his jurisdiction, the county judge shall, either in ·term time or in vacation, issue a warrant to the proper officer commanding, that such person be 'brought before him at a time and place named in such warrant."

Article 4272 provides:

"If it be found by the jury that the defend.ant is of unsound mind or is an habitual drunk.ard, as charged, the court shall proceed, immediately and without further notice, to appoint a guardian of the person and estate of such ·defendant in the same manner as in the case ·of a minor."

It is inconceivable that there should be no .appeal from such a summary proceeding as provided for in the last two articles. It is possible for the liberty and property of a ·citizen to be taken from him wrongfully, and, lacking the right of appeal, such orders and judgments having become final, thus perpetrate the wrong done him. It is asserted by appellees that no appeals from these orders can be taken because such proceedings were and are not "a probate proceeding." We can make no such distinction. The question as to whether a party is of unsound mind is a jurisdictional fact, to be ascertained before such guardian can be appointed, and the order appointing such guardian is based solely upon the ascertained fact of unsoundness of mind. Hence the finding as to the unsoundness of mind is as much a part of the probate proceedings as the order of appointment.

[3] The appeal as taken in this cause is not a collateral attack on a final judgment of a court of competent jurisdiction, but is, essentially, a direct attack, a method of appeal from the very judgment attacked. Linch v. Broad, 70 Tex. 92, 94, 6 S. W. 751.

Article 4329 of said statutes provides as follows:

"Any person interested may also have any decision, order or judgment of the county court, or county judge revised and corrected by writ of certiorari from the district court under the same rules and regulations as are provided in estates of decedents."

[4] It is true that the statutes also provide for a motion for a new trial and for a bill of review. As to the motion for a new trial, the petition states abundant reasons for it not having been made. As to the bill of review, our Supreme Court has held that it is not necessary to first proceed by bill of review in the county court before applying to the district court for a writ of certiorari. Jirou v. Jirou, 104 Tex. 136, 141, 135 S. W. 114. In other words, this article provides another method of revision, whereby an interested party may have the county court proceedings tried de novo.

[5] In the Jirou Case, supra, it is also held that the article authorizing a trial de novo upon certiorari is not unconstitutional, but that the jurisdiction of the district court, while appellate in its nature, extends to and can be exercised by a trial upon the facts of the case, as well as by a revision of the record made in the trial court.

By article 4318 it is provided that any person who may consider himself aggrieved by any decision, order, or judgment of the court, or by any order of the judge thereof, in relation to guardianships, may appeal to the district court as a matter of right without bond.

We therefore hold that a person who has been adjudged as being of unsound mind in a proceeding instituted in a county court, and wherein a guardian for his person and estate has been appointed, can have the proceedings in the county court revised by certiorari to the district court, and this to include the question of unsoundness of mind, and that upon such hearing in the district court the cause is to be tried de novo.

[6] The trial court is required, after a finding of a jury that a party is of unsound mind, to immediately proceed to appoint a guardian of the person and estate of·such person. This the court did not do, but, after declaring Mrs. Warrick to be of unsound mind, left her without any one to exercise restraint or control of her person. It was evidently intended by this article that some one should be appointed to exercise at least the same care of her personally as was given to her estate. It is true that the trial court attempted to make provision for her maintenance by authorizing the guardian of her estate to furnish the necessary funds for that purpose, but that was not complying with the law requiring

that a guardian of her person be appointed. However, on another trial, if the necessity is shown, and as the matter is to be disposed of de novo, this can be remedied.

[7] Appellees insist that the petition for certiorari fails to state such errors on the part of the trial court as entitled Mrs. Warrick to have such writ granted her. We think the petition abundantly sufficient. Her petition alleges that she had no notice or knowledge of any kind as to the nature of the proceedings which were being conducted in the county court; that the sheriff came after her and took her to the courthouse; that no one gave her any information as to what was transpiring; that she did not know and was never informed that she was being tried for insanity; that when she asked, "What is all of this about?" some person, adversely interested, replied, "This is a proceeding whereby you will get more money for the property you have sold, wouldn't you like to have more money for it?" to which she replied, "That would be all right if it is honest"; that she never knew of the need of an attorney, because she had no knowledge of any kind that would have notified her that she was required to defend any kind of action.

[8] If her petition is true, as we are bound to consider same for the purpose of passing on the question as to whether the court correctly sustained the motion to dismiss—the motion being on the same footing of a general demurrer—she not only fully accounts for her failure to present a defense, but she also shows and alleges that she is not of unsound mind.

We cannot hold that such a petition, as set out above, presents no legal ground for the issuance of the writ of certiorari, for the reason that it certainly presents an adequate ground for relief from an illegal conviction of unsoundness of mind when she denies the very fact of unsoundness.

[9, 10] Appellant had the right to have had some notice of the proceedings instituted against her, and due process of law requires such notice. White v. White, 108 Tex. 571, 588, 196 S. W. 508, L. R. A. 1918A, 349. She had the right to be represented by an attorney of her own choosing; she had a constitutional right to a jury selected after an examination and testing. This jury is such a jury as has been impaneled and sworn according to the requirements of the law. Ordinarily a jury of twelve men is meant by a jury, but, as the law names a number of men other than twelve men, then the appellant was entitled to such a "jury" after they had been fully examined and tested. It is often said that it is a constitutional right to demand and have a jury, but Mr. Cooley says that it was a matter of historical right before it was declared in the Constitution; that the Constitution only preserved it; that a party having such right to a jury is entitled to examine into the qualification and impartiality of jurors; and that no conditions can be imposed upon the exercise of that right which impair its value and usefulness. Cooley's Constitutional Limitations (7th Ed.) 590, 591.

[11] While we are of the opinion that the matters and things alleged in the petition did comply with the rules applicable to a motion for a new trial, yet it has been held by our Supreme Court that the same degree of strictness is not required in passing on the sufficiency for a petition for certiorari, but—

"where, from the averments of the petition, if true (and they are to be taken as true on a motion to dismiss for the want of merits in the petition), it appears that the party has merits, and there is reason to apprehend that injustice may have been done him, without any fault of his; and especially where, as in the present case, the decision is one which affects not only his property but his reputation, the writ ought to be granted and a new trial awarded." King v. Longcope, 7 Tex. 236, 239; Ford v. Williams, 6 Tex. 311; O'Brien v. Dunn, 5 Tex. 571, 576.

[12-14] The court submitted to the jury the question, Was Mrs. Warrick of sound mind? This is the negative of the question propounded by the statute, but, conceding in that respect that it was properly submitted, yet, unaccompanied by explanatory charges, it was improper, for the jury could have no guidance to enable them to understand what the law intends by unsoundness of mind. Norton v. Houston (Tex. Civ. App.) 235 S. W. 963, 967. Especially is this true when the two witnesses who testified that she was of unsound mind preceded the giving of their opinions with statements wholly lacking in probative force to establish their conclusions. Not only was Mrs. Warrick entitled to have these witnesses cross-examined, but this testimony as given was not sufficient for the jury to predicate their verdict upon. Mrs. Warrick was over 80 years of age and slightly deaf. She had sold some oil royalties on her land at a price below the value of same, as charged. The witnesses did not think she knew the value of her property. In addition, she was said by one witness to be harsh with children. This is not such evidence upon which a jury could properly base a verdict that she was of unsound mind. Norton v. Houston, supra. Again, another witness testified that Mrs. Warrick would stay at his house, or a neighbor's house, for a week or more at a time, and seemed to have no idea of the value of her board and keep. This does not necessarily carry with it any proof of unsoundness of mind. A great many people have this failing, but we cannot hold that it is a mental failing.

We have carefully considered this record, and have discussed those questions we deemed paramount and controlling. There are other questions which we do not think necessary to discuss, for the reason that they are not likely to arise upon a trial of the

case de novo in the district court, or that they are immaterial to a decision of the case.

Holding as indicated above, we reverse the judgment of the trial court, and remand the case to the district court of Moore county for trial de novo in accordance with this opinion.